Good morning, Your Honors. May it please the Court, John Abel here with the Federal Defender's Office. I'm representing Howard Dixon. I'm joined at Council Table by my colleague Carmen Smarandolla. Police officers conducted a Fourth Amendment search under Jones when they inserted a key into the lock of Mr. Dixon's van. This search was done without a warrant and is therefore unreasonable unless it falls within one of the exceptions to the warrant requirements. The exception at issue here is the one for parole and probation searches. But that doesn't justify the search here because the officers did not have a sufficient degree of knowledge to connect Mr. Dixon to the item they were searching, in particular to the van. Well, didn't this officer say that he was going toward the van that he'd seen him in before or something like that? Yes, Your Honor, the officer did say that in his declaration, but this Court can't rely on that because that's a contested fact. Mr. Dixon said in his declaration that he was not approaching the van, in fact, that he had walked past it and that he was going to be picked up by a friend of his, so he wasn't going to drive the van. The district judge should have held an evidentiary hearing on that material fact if this Court were to rely on it. And so — Is that what you want here? You're wanting it to be sent back down for that purpose? Your Honor, I think the record is not sufficient for the government to carry its burden, so my first preference would be a reversal. However, if the government — I'm sorry, if the Court is going to say that there is reasonable suspicion or that it's close, then there are a number of contested facts in the record that would have to be resolved at an evidentiary hearing before this Court could hold them against Mr. Dixon. So from the government's perspective, I gather you concede that the officer on an uncontested basis claimed that he saw Mr. Dixon in what he thought was the van on two previous occasions. You agree with that, right? Yes, that's correct. So he probably would have at least reasonable suspicion there. The question is, do we need or do we get to probable cause based upon the dropping of the key and his moving toward the van? Is it your position that because those are both contested, you have to go back to an evidentiary hearing to determine whether that's accurate or not? Your Honor, I think there are a number of questions in there, so I'm going to try and answer them all. Okay. I don't concede that he had reasonable suspicion. Based upon seeing him in the van. Correct. And if I could explain what I think is insufficient about that is there is a declaration from the officer that he saw Mr. Dixon driving this blue van two times. However, it's two times over a period of 62 days. And the record doesn't say when. We don't know if that was 62 and 61 days before the search or if it was the day before. And so for this probation condition to be engaged, either the officer has to demonstrate ownership, and I think the fact that Mr. Dixon was allegedly driving the van, I don't think that goes to ownership. Does it matter that there's ownership as long as he has control? Correct. So control would be enough. However, driving a car 62 and 61 days before the day of the search. We don't know how many days before, do we? Correct. We don't know. So if I recall the record correctly, I don't think your client contested that element of the officer's statements. Is that correct? That he had been seen in the van twice before. Right. That's not contested in my client's declaration. I guess my, excuse me, I get back to the point, does that not at least arguably create reasonable suspicion? Not probable cause, but reasonable suspicion. If the district court were to find that fact that he had been in the car two times, I would say it's still not enough reasonable suspicion because it's consistent with him borrowing the car or with a roommate, borrowing a car from a roommate, from a friend. The fact that he drove it 62 or 61 days prior, and those are obviously the extreme limit of this. Sure. But the point is it has to be reasonable suspicion that he controlled it on the day of the search. Let me move it a little bit farther. Whether or not that constitutes reasonable suspicion, is it your position that because the police inserted the key into the lock, that that under Jones and perhaps Hardines constitutes a search? Is that your view? That's correct. I would say Jones, yes. And you think, is there any case law other than our analogizing to Jones that verifies that point? Yes. The Fifth Circuit in United States v. Richmond found that an officer who touched a tire with his finger had searched the tire. And the Sixth Circuit in Taylor v. City of Saginaw found that the mere chalking of a tire by a parking enforcement officer, that was a search. There's a fascinating district court decision from the Eastern District of Louisiana, STASI, and that found that rubbing, an officer swiped DNA from the outside of a car, a Hummer, and that was found to be a search. Okay. So if that is a search, then I gather your position is that even if the officers had reasonable suspicion, that's not enough. You need probable cause, right, to make the search. Right. Well, let me... Or is that your position? So we think that the standard for the amount of information to connect the probationer to the item is probable cause. Okay. And what's your best argument that given the totality of what occurred here based upon the record, part of which is contested, that there was not probable cause to insert the key into the lock? Right. So I think that the government connects. There are three facts the government uses to connect Mr. Dixon to the van. And the first one is the contested one, that he was walking towards the driver's side. So I don't think you can rely on that. And then there are the two observations of him driving the van, which we've talked about. And then there's the observation that on two occasions during the 62-day period, the van was parked in front of the apartment complex. And for the same reasons... Right. So the key, the problem with relying on the key is that inserting the key was a search, and that is always a threshold inquiry. Did a search occur? And so the government needed probable cause or even reasonable suspicion, whatever standard this court chooses, before conducting that initial search. And I want to point to one more factor, and this is from Granberry. Excuse me. The initial search is the insertion of the key, right? Correct. It is holding the key, which was dropped, right? Right. It's the insertion of the key. Okay. All right. That requires us overruling or saying that intervening Supreme Court precedent has overruled our prior decision in currency that inserting the key is not a search. Your Honor, I disagree with that. And I think that they're reconcilable because Jones itself had said that the Jones inquiry, was there a search? That always comes before the Katz inquiry. And so the way I would read these cases is that this was a search under Jones, so there's no need for the court to analyze Katz and all the reasonable expectations of privacy. In currency and grand staff, they relied exclusively on Katz. So this court could find them completely reconcilable. For instance, a defendant who claimed that a key insertion was a search but didn't raise a Jones claim, just argued it under Katz, well, then currency and grand staff would still be in place. But in this case, all the court would have to do is apply Jones, find that there was a search, and then there would be no need to overrule the other Katz-based precedents. That's a stretch. Your Honor, I don't think so. What you're doing is you're saying there's two theories here of what constitutes Fourth Amendment intrusion, and one is property-based and one is reasonable expectation. But we're talking about theories. It's still the fact is the issue, the question is whether or not the insertion of the key into the lock is a search. Yes. There are two theories. And I would point this court to the United States v. Richmond decision, the Fifth Circuit, where there was also a Katz-based precedent saying that touching a tire was not a search. The Fifth Circuit applied Jones and said it is a search under Jones, and it was not necessary to overrule the prior precedent. And I think that is the route the court should take. So you think we can preserve currency even in the face of Jones? Yes. I think you could overrule it as well. It would be easier, more elegant, I think, to just not do really what the Fifth Circuit did. You don't think it's elegant to overrule something? You know, I like overruling, but there are costs entailed in going en banc and other things. I think it would be a cleaner and easier decision just to. . . I almost think there's more likelihood of going en banc if we say, oh, yeah, currency is still good law. I leave that to your discretion, and it would be an interesting experiment. But the important thing is you must apply Jones. Could I reserve some time for rebuttal? Yes, you may. Not that you have any, but I'll give you a minute. Speak quickly. It's almost a metaphysical question. How do you reserve what you do not have?  Good morning, Your Honors, and may it please the Court. My name is Sloan Heffernan, and I represent the United States in this appeal. District Court in this case did not err by denying suppression of the evidence recovered from Mr. Dixon's van or person, nor did the District Court err in finding that Mr. Dixon did not accept responsibility. This Court should affirm. I think the key question here is whether the search of the minivan is a lawful intervening search. So why don't you address that? Absolutely, Your Honor. As this Court recognized just previously, currency made clear that the warrantless insertion of a key into a car door as locked was not a search requiring probable cause under the Fourth Amendment. But how can that be squared with Jones? Even if this Court were to follow the logic or the arguments brought by Mr. Dixon's counsel and say that under Jones this is somehow a search, which I don't think that it was either, I do think that he's right in the sense that those cases can be reconciled. Jones, for one, is factually distinguishable from this case and from currency for a number of reasons. And just as the narrow issue as to whether or not there was a search in Jones, there the Court emphasized not just how significant the act was of applying the GPS device and subsequently monitoring the physical whereabouts of the car for 28 days, but also that the officer there had attached that device to the undercarriage of the vehicle. But let me just read you a little piece here from Jones. The Court said that when the government, and I'm quoting now, physically occupied private property for the purpose of obtaining information, including of a vehicle, is a search. That's pretty clear, isn't it? I think that's clear, but it also preassumes, Your Honor, that there is a constitutionally protected interest or that the keyhole of the door is constitutionally protected. Jones didn't necessarily address that. And if this Court were to find that here, Mr. Dixon's car door had a keyhole that was subject to constitutional protections, that still wouldn't make Jones necessarily dispositive on the real issue before the Court, which is not whether it was even a search, but whether it was— I think the first thing is, was it a search? And then if it was a search, it requires probable cause. And then the question is whether what you cited, based on Ochoa's declaration, constitutes probable cause. Okay. So the first question, is it a search? Under currency, no, it wasn't a search. Under Jones, it's a clearer question. It's a more difficult one. If the Court were to find that the keyhole is a constitutionally protected area, then I do agree that the insertion of the key— Well, let's assume, arguendo, that it is a search. What is the government's best argument that the police had probable cause to make such a search in this case? The fact that the officer who initiated the search, Officer Ochoa, knew that Mr. Dixon, who he'd been investigating for shooting, was driving that van on at least two separate occasions in the two months leading up to the search, that Officer Ochoa had also observed that van parked unoccupied outside of Mr. Dixon's suspected apartment on at least two occasions, that on the date of the search, Officer Ochoa again observed that van parked outside of the apartment and observed Mr. Dixon exit the apartment and approach the van carrying two bags. And as he approached the van, he was detained by officers and dropped a set of keys on the ground. Did they ask him to drop the keys, or did he just do it on his own? From the record, it's not clear if they directed him to, but he did drop them while he approached. And the District Court, in summarizing the facts of the case, did describe Mr. Dixon as approaching the van when he was detained. The other side says that they dispute that, that the counsel disputed that. Do you agree that if probable cause is the controlling question here, that we would need to send this back to the District Court for an evidentiary hearing on that issue? No, I don't agree, Your Honor. And the reason for that is even if probable cause were the standard, and it's not, this Court has never held that probable cause is the standard as to whether or not a parolee possesses a vehicle. But it would be if we said that the search was a search, that it is a standard. No, I don't necessarily agree with that, Your Honor, either. First, I do think that there was— I'm sorry, I didn't mean to interrupt. Continue answering Judge Smith's question. Okay. So to clarify, maybe I can help answer both of those sequentially. Again, we're back to whether we need to send this back for an evidentiary hearing to determine whether there's probable cause because Mr. Dixon's counsel says that he disputes at least two, maybe three of the points that you make. Yes. No, I do not think so. First of all, I do think that on this record, even before the keys were picked up from the ground, that those facts viewed alone, the prior observations of driving, the van parked outside, approaching the van again with the key, those in and of themselves establish probable cause that the van was in Mr. Dixon's possession or control. Okay. Did the district court find that the insertion of the key into the minivan was a search? The district court followed this court's precedent in currency and found that it was not a search under the Fourth Amendment. Did it make a finding as to probable cause or reasonable suspicion? It skipped right ahead. As to the search of the van, it skipped right ahead to probable cause. It wasn't a search and then just made a— because it might be one way to resolve this case is to say this is a search under Jones. You, district court, figure out whether or not you have probable cause. I mean, that is a possible way to deal with that. It is, and I—to be clear, when the court found probable cause, first it expressed uncertainty or doubt as to whether or not probable cause was the standard. But second, the district court also said, irrespective of everything else, and it didn't specifically credit or discredit some of the other facts, it just found insertion of the key at that moment there was probable cause. So whether or not this court were to find that that act in and of itself was a search requiring probable cause, under Jones, the reason it's not barred by Jones and why this was still a valid search that wouldn't require remand or wouldn't require consideration or decision on some of the more thorny issues is because Jones never considered, never addressed the reasonableness of what happened in that case. Jones merely decided whether or not a search had occurred. Here, there are a number of factors which this court can and should consider suggesting that even if this was a search, it was reasonable. Wait, can I—I just want to—so as one question about this, these facts that Ochoa declares, he said that he also saw Dixon driving a black BMW, right? Correct. Does that lessen the probable causes to ownership or control over the blue minivan if he's also driving around? I mean, you're not asserting he owned or controlled both cars, or I don't know what the point of inclusion of that Ochoa comment was. It describes his prior observations in the two months leading up to the search. So doesn't that suggest more that Dixon was just a driver? Not necessarily, Your Honor. I think the relevance of that is actually quite limited, but I will point out in Mr. Dixon's motion and in his declaration submitted to the district court, and it's also in this court's record, Mr. Dixon himself acknowledged that he owned the blue van in this case at the time it was searched, and he disputed that Officer Ochoa had ever seen him inside a black BMW. Mr. Dixon's declaration did not dispute Officer Ochoa's observations of him. I don't understand the whole point of the digression into the black BMW in this case. I think it was just more the officer's attempt to describe all of his observations of Mr. Dixon while he'd been investigating him for those two months in relation to the shooting. What is the government's position regarding Granbury? As I read Granbury, if the insertion of the key constitutes a search under Jones, that Granbury would require probable cause to do the search. Do you agree with that, if it's a search? Sorry, I'm just taking a minute to make sure I complete that. That's okay. Because your question, if I understand it correctly, Your Honor, is whether or not the search itself required probable cause, not whether there's probable cause or reasonable suspicion as to control. That's right. In other words, if arguendo, the insertion of the key is a search under Jones, does Granbury require, in other words, what is the standard that must be met to make the search, undertake it lawfully, is probable cause as opposed to reasonable suspicion, for example? I'm not quite sure, but even assuming, I'll just assume for the sake of answering Your Honor's question that let's assume it was probable cause that were the standard required here for the first time. Under Jones, that wouldn't make what happened here any less, it wouldn't make the facts of this any less deserving of rising to the level of probable cause, nor would it make what happened here any less reasonable. I mean, here, as was said repeatedly in Granbury, the touchstone is reasonableness. Here, we had not only all those officers' observations, we had a minimally invasive action, we had a defendant whose Fourth Amendment rights were significantly reduced, and that's weighed against the fact of the government's compelling need to monitor and supervise parolees. Under the totality of the circumstances and the reduced privacy expectation with vehicles, on balance, this would make any kind of search, irrespective of if it's a reasonable suspicion or probable cause standard, it would make it reasonable. I see that my time's up. I thank the Court for its time. Did you want to say anything on the acceptance of responsibility issue? Yes, if I may have just—  Absolutely, Your Honor. Just briefly, the District Court did not err with respect to the acceptance responsibility determination. While certain excerpts from the sentencing transcript, if viewed in isolation, might suggest it had a narrow view of its rights or its ability to impose a sentence, when viewed in its entirety, the District Court made quite clear it was considering all of the proceedings that it sat through from the inception of the case through the motion to suppress hearing, the declarations, the suppressed evidence, the trial, all the things up until sentencing. What the District Court did here was exactly what it was entitled to do under 3E1.1 and the application notes where it's quite clear, District Courts have very clear direction that not only should a reduction after trial be rare, but it sets forth the factors that they can consider. Early acceptance of responsibility substantially demonstrated by a guilty plea before trial. That didn't happen here. But did he admit all the time that he had the possession of the drugs, but was it for purposes of sale? And I actually, I respectfully disagree with the defense's characterization of that, as was argued at sentencing before the District Court and in the government sentencing memorandum. Mr. Dixon, when first found with the drugs, was shown on video when they were recovered. He says, those aren't mine, or what's the effect? Even at the motion to suppress hearing, Mr. Dixon's own attorney was claiming that the drugs later recovered from his person were not his. They were disputing that. That was less than two months before Mr. Dixon was later convicted of possessing those drugs. But what's most striking, what's most significant as to that issue, Your Honors, is that from the beginning of this case throughout, Mr. Dixon denied possessing those drugs for sale. And at the sentencing, during the allocution, Mr. Dixon told the court, I did not possess those drugs for purposes of dealing. But he wasn't convicted of possession for purposes of dealing. He was convicted of possession. Correct, nor was he acquitted. As Your Honors are probably aware, it was a mistrial as to those counts. But on page 29 of the sentencing hearing transcript, or ER 29, the District Court responded to that claim by saying, Mr. Dixon, I believe that the evidence shows that you were dealing drugs. So, in essence, Mr. Dixon's conduct was lying to the District Court judge about what was relevant conduct here, is dealing drugs. And the District Court did find that the evidence showed that Mr. Dixon was dealing drugs. That alone, Mr. Dixon— Wait a minute, though. Don't the sentencing guidelines contain a statement that the defendant is not required, excuse me, to admit relevant conduct beyond what the jury convicted him of? That's correct, Your Honor. Suggesting that the judge said, I don't believe that, you know, I think you're guilty. Is that enough for purposes of denying responsibility? So I think the Rutledge case, to clarify that issue, the Rutledge case the government cites, too, in its papers, make clear the defendant was not required to confess to any relevant conduct beyond the offense of conviction in order to obtain the reduction. Right. So he was entitled to remain silent, as was Mr. Dixon. Mr. Dixon took it upon himself, not just at the sentencing hearing, but even before, to deny dealing. But at the sentencing hearing, during his allocution, Mr. Dixon chose to relinquish that right. And at that point, under Rutledge and other cases this Court has found, when he makes a false denial about relevant conduct to the District Court, his veracity can absolutely be considered by the District Court judge in denying acceptance. So you think that the guidelines, vice, if you will, is irrelevant here because it has nothing to do with whether the jury convicted him. It's that he later on got involved in a discussion with the judge. The judge concluded independently that he was lying, and that's what he was basing it on. Well, first, I don't think that the guidance in the guidelines or the commentary, the application notes, are insignificant. But I do think application notes 1, 2, and 3, for 3E1.1, for that section, are instructive. And those make clear that significance of acceptance of responsibility includes either truthful admission to or at least not falsely denying relevant conduct. Here, there was clear evidence on the record that Mr. Dixon was, in fact, denying relevant conduct that the District Court found to be true. All right. Thank you, counsel. Thank you. I'll give you a couple minutes given. Thank you. So I thought I had five seconds, so I prepared very short. Let me just tell you that as far as— You don't have to use that all the time. Okay. Well, then I'll still speak fast anyway. But in the answering brief, the government never says there's probable cause. So I think that's telling. There's another van, another blue van, right there next to the van. So not only is there this other black car, but there's a van making it even harder to reach probable cause. And I want to point to Granberry, because Granberry talks about the reasonableness of the probable cause determination, and it says look at the investigative methods that the officers could have but did not take. And here, there's a striking one. The officers ran a DMV search on Mr. Dixon. It says that in the declaration, and they never bothered to note down whether the car was registered to them. That would have been a very, very clean way of showing that he owned it, and we wouldn't be here talking about that. Would it be okay to address the sentencing? Yes. Please. So we have a fundamental disagreement. The government thinks that the district courts basically engaged with the merits and found that Mr. Dixon wasn't genuinely contrite. The more appropriate way to read the record is that the district judge said someone who does not plead guilty to the charged offenses cannot receive acceptance credit. This was a legal determination, and it happens to be wrong. And we've shown the cases where people do get acceptance credit for doing exactly what Mr. Dixon did, which was to admit guilt to what he did and to deny it to what he didn't do. And the government does not argue harmless error in its brief. There are a bunch of arguments about why it thinks Mr. Dixon wasn't contrite, but we know that the district court didn't treat this as harmless error because the district court told Mr. Dixon, test your theory on appeal. Had the district court decided that Mr. Dixon had lied, why would he have done that? And further on in the record, there is a debate about whether the probation violation was a Class A or a Class C, and the district judge said he would find it a Class C, but if the court, the appellate court disagrees with him, he would have entered the same sentence under Class A. So there's an example of how this judge deals with an error that he would consider harmless. And in this case, it's very clear that he relied on an incorrect legal interpretation, and we would request a remand for the judge to do it again and to consider Mr. Dixon this time. Thank you very much. Thank you very much, counsel. U.S. v. Dixon is submitted.
judges: Siler, Wardlaw, M. Smith